IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3192-F

| | | |
|---|---|---|
| ANTHONY BADU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| RICHARD O. BROADWELL, III, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Before the court are the motions to dismiss (D.E. # 24, 33) of defendants Dr. Richard O. Broadwell, III, and Nurses K. Hull and M. Gaskill., and the parties' various submissions concerning the motions. Dr. Broadwell seeks dismissal of the complaint against him on the following grounds:

> (1) insufficiency of service of process under Rule 12(b)(5) and Rule 4 of the Federal Rules of Civil Procedure, and therefore, lack of personal jurisdiction under Rule 12(b)(2); (2) [. . .] failure to state a claim for deliberate indifference to a serious medical need pursuant to 42 U.S.C. § 1983 ("§ 1983") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; (3) [. . .] failure to state a claim for injunctive relief; and (4) [. . .] failure to state a claim for punitive damages against Defendant Broadwell.

Def.'s Mot. To Dis. [D.E. # 24] 1. Dr. Broadwell also seeks a ruling that he is entitled to qualified immunity. Id. Defendants Hull and Gaskill assert that "Plaintiff's Complaint fails to state a claim against them upon which relief can be granted and that any such claims are barred by the doctrine of qualified immunity." Defs.' Mot. To Dis. [D.E. # 33] 1. In addition, the nurse defendants also seek dismissal of plaintiff's claims for injunctive relief and punitive damages. Defs.' Supp. Mem.

1

[D.E. # 35] 6-7. For the reasons that follow, the court will deny the motions to dismiss.

## DEFENDANT BROADWELL'S MOTION TO DISMISS

I.   Service of Process and Personal Jurisdiction Issues

Proper service of process (or waiver of service under Fed. R. Civ. P. 4(d)) is necessary for the court to exercise personal jurisdiction over a defendant. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). Under Rule 4(m) of the Federal Rules of Civil Procedure, if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court must dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time, unless the plaintiff can show good cause. Fed. R. Civ. P. 4(m). Rule 4(e)(1) permits a plaintiff to serve individual defendants "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(e)(1). The North Carolina Rules of Civil Procedure permit service "[b]y mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. Gen. Stat. § 1A–1, Rule 4(j)(1)(c).

Dr. Broadwell contends that he received and signed for the complaint "on February 23, 2012, 140 days after the filing of the Complaint . . . and 17 days after the deadline for service of the Summons and Complaint had passed. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, Plaintiff has failed to comply with Rule 4(m), and his Complaint should be dismissed." Def.'s Mem. [D.E. # 25] 6. Thus, he concludes, "because the process is insufficient and the manner of service needed to exercise personal jurisdiction pursuant to Rule 4 is insufficient, this Complaint should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2)." Id. at 7.

2

Dr. Broadwell's argument is without merit. As a *pro se* inmate proceeding in this case under 28 U.S.C. § 1915, plaintiff can achieve service of process only after the court enters an order directing the United States Marshal to attempt service. Fed. R. Civ. P. 4(c)(3). As is this court's practice, the court did not issue such an order until after it had completed its frivolity review of plaintiff's complaint on January 18, 2012. The Fourth Circuit has previously held that Rule 4(m)'s 120 day period is tolled while a district court considers an *in forma pauperis* applicant's complaint under 28 U.S.C. § 1915. See Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010) ("Thus, the period of time before the district court authorized service by the Marshals Service does not count against Robinson for purposes of determining the limitation period."). Moreover, the delay in service of process which is attributable to a court's review under § 1915 rather than the plaintiff also satisfies the "good cause" requirement of Rule 4(m) to warrant an extension of time for service. Id. ("Because the delay caused by the court's failure to authorize the issuance and service of process is beyond the control of an *in forma pauperis* plaintiff, such failure constitutes good cause requiring the 120-day period to be extended.").

In this case, plaintiff filed his complaint on or about October 3, 2011. The court granted his motion for leave to proceed *in forma pauperis* on October 6, 2011. The court entered its order on frivolity review of the complaint on January 18, 2012, and further ordered the Marshal to attempt service of process on February 13, 2012. Dr. Broadwell was served on February 23, 2012. Because Dr. Broadwell was served with the summons and complaint within 120 days of the date "the district court authorized service by the Marshals Service," and because plaintiff has likewise shown "good cause" for any failure to serve the complaint within 120 days of the date it was filed with the court, the motion to dismiss for insufficiency of service of process and lack of personal jurisdiction is due

3

to be denied.

II.  Sufficiency of Plaintiff's Factual Allegations.

Dr. Broadwell also asserts that the complaint against him should be dismissed him due to plaintiff's failure to state a claim upon which relief could be granted. Plaintiff alleges that Dr. Broadwell was deliberately indifferent to his serious medical needs due to his response to two separate medical conditions for which plaintiff sought treatment. Plaintiff first claims that Dr. Broadwell "interfered with previously prescribed and effective treatment for high blood pressure, that had been in place for nearly (11) years" when he altered plaintiff's purportedly effective "cocktail" of drugs. Compl. [D.E. # 1] at 4-5. Plaintiff claims that the change in his medications resulted in higher blood pressure readings and that he immediately began suffering symptoms, including headaches, chest pain, dizziness, and anxiety. Id. at 5. Plaintiff alleges that he began placing sick-call requests, filing grievances, and corresponding with officials in an attempt to get treatment for his pain, but that he could not see Dr. Broadwell over the following several months as he continued to suffer. Id. He thus claims that Dr. Broadwell's "prolonged refusal to see me and provide adequate high blood pressure medicine constitutes deliberate indifference to [his] serious medical needs resulting in unnecessary and wanton infliction of pain." Id. at 6.

Plaintiff also alleges that Dr. Broadwell similarly "interfered" with his effective prescription medication for a "perennial" allergy condition. He alleges that he had successfully treated his allergy for several years with cetirizine (zyrtec), which was prescribed to him by a physician at another penal institution after much trial and elimination of other allergy medications. Id. at 6-7. Plaintiff claims that Dr. Broadwell discontinued his cetirizine prescription and instead prescribed claritin, despite that claritin had previously been unsuccessful in treating his condition. Id. at 7. Plaintiff alleges that

4

being on claritin "is like being on nothing," and that he therefore commenced suffering symptoms including "irritated nose, ears, face and throat, and occasional swelling of the throat." Pl.'s Decl. [D.E. # 2] 4. As with his complaints about "untreated" hypertension, plaintiff alleges that he requested to be seen by Dr. Broadwell by filing sick-call requests, but that he was unable to see Dr. Broadwell for a considerable time. Plaintiff also alleges that Dr. Broadwell promised him that he would provide more effective allergy medication during February of 2011, yet he still is only being provided with the ineffective claritin. Finally, plaintiff also at least implies that the decision to change his medication from cetirizine to claritin could have been based on "cost efficiency" rather than medical efficacy. See Compl. [D.E. # 1] 7.

> Dr. Broadwell contends that plaintiff fails to state a claim against him because his
>
> allegations demonstrate that: (1) he was examined by Defendant Broadwell, Defendant Hull and Defendant Gaskill; (2) at least five different medications were provided to Plaintiff, including Clonidine, Ibuprofen, Claritin, Verapamil, and Enalapril; and (3) sick call appointment screenings were performed by nurses on at least eleven (11) occasions. (D.E. ## 1- 2). These allegations, without more, cannot support a claim against Defendant Broadwell for a violation of Plaintiff's Eighth Amendment rights.

Def.'s Supp. Mem. [D.E. # 25] 12. Dr. Broadwell maintains that "Plaintiff's claims amount to nothing more than a disagreement with the medical judgment of Defendant Broadwell, which fails to state a claim for deliberate indifference. Plaintiff's Complaint should be dismissed with prejudice because it fails to state a claim for the violation of a clearly established right." Id. at 14.

When subjected to a Rule 12(b)(6) motion, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir.2008) (emphasis in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Supreme Court in Twombly upheld a Rule 12(b)(6) dismissal because

the complaint failed to allege facts sufficient to show a claim was plausible rather than merely conceivable. See Monroe v. City of Charlottesville, Va., 579 F.3d 380, 386 (4th Cir.2009), cert. denied, 130 S.Ct. 1740 (2010). Accordingly, while a reviewing court must "accept as true all well-leaded allegations and view the complaint in the light most favorable to the plaintiff, Philips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009), the court still "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Simmons v. United Mortg. and Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir.2011) (internal quotations and citations omitted). In doing so, "the court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Monroe, 579 F.3d at 385–86 (quotation marks and alteration marks omitted).

Plaintiff claims that Dr. Broadwell was deliberately indifferent to his serious medical needs. Such claims fall under the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Plaintiff must plausibly allege a "deliberate indifference to [his] serious medical needs." Id. "[T]he need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). A "'serious . . . medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)). "Deliberate indifference is a very high standard–a showing of mere negligence will not meet it." Grayson, 195 F.3d at 695. When the plaintiff complains that defendant physicians were deliberately indifferent despite

6

rendering treatment, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). However, "mere delay or interference can be sufficient to constitute a violation of the Eighth Amendment." Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009).

Construing plaintiff's allegations liberally, as this court is required to do, the court cannot conclude at this time that plaintiff's allegations do not at least state plausible and non-speculative claims for deliberate indifference. While Dr. Broadwell asserts that plaintiff's claims amount to little more than disagreements over the treatment he received, it is clear that plaintiff's claims are more nuanced. For example, plaintiff alleges that Dr. Broadwell, without "physically examining or screening" plaintiff, see Pl.'s Supp. Mem. [D.E. # 36] 4-5, "interfered" with his medications by reducing or outright discontinuing plaintiff's allegedly efficacious medications for his high blood pressure and allergic conditions. Plaintiff alleges that these alterations to his prescription regimen caused immediate and severe symptoms, and that Dr. Broadwell for several months refused to see plaintiff to examine whether his new medications were effective or whether other treatment might be more appropriate. In the case of plaintiff's hypertension, he alleges that he endured the severe symptoms caused by the purportedly ineffective medication for approximately four months, until Dr. Broadwell prescribed a new "cocktail" in February, 2011, which once again successfully treated his high blood pressure. Regarding his allergic condition, plaintiff maintains that, although Dr. Broadwell promised to help him at their meeting in February, 2011, he is still being provided with the ineffective claritin and continues to suffer the symptoms associated with his perennial allergy. Pl.'s Decl. [D.E. # 2] 10-11. Plaintiff also implicitly alleges that the decision to alter his prescriptions possibly stemmed from reasons other than medical judgment, including purported

7

"non-compliance," a justification which plaintiff disputes, and/or cost-efficiency. See Pl.'s Decl. [D.E. # 2] at 5-6; Compl. 7. Hence, while it is generally correct that plaintiff's mere dispute with Dr. Broadwell's medical judgment is insufficient to sustain a constitutional claim for deliberate indifference, it is apparent that plaintiff's allegations entail more than a run-of-the-mill dispute over treatment. Instead, they focus on Dr. Broadwell's decision to discontinue plaintiff's purportedly efficacious medications, alleged failure to see or treat plaintiff after he repeatedly complained that the new prescriptions were not treating his conditions, and failure to fulfill a promise to better treat plaintiff's allergic condition even after Dr. Broadwell prescribed effective blood pressure medication. While further development of the record may preclude plaintiff from obtaining relief on these claims, he has at least sufficiently alleged claims of deliberate indifference for purposes of Rule 12(b)(6).

Dr. Broadwell's emphasis on the extent of treatment plaintiff did receive is not determinative of this issue. In order to state a claim for deliberate indifference, plaintiff is not required to allege "that he was literally ignored." Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010). Rather, "a doctor's choice of the 'easier and less efficacious treatment' for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment." Id. (quoting Estelle, 429 U.S. at 106). See also Brown v. Lamanna, 304 F. App'x 206, 208 (4th Cir. 2008) (citing Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005), for proposition that "'dogged[] persist[ence] in a course of treatment known to be ineffective' can violate the Eighth Amendment"). See also Berry, 604 F.3d at 441 (quoting Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2010) ("medical personnel cannot simply resort to an easier course of treatment that they know is ineffective"). Thus, where plaintiff is alleging that he was denied previously effective medications and was prescribed and forced to continue with medications that were known to be ineffective for

8

several months or longer, Dr. Broadwell's defense that his treatment nevertheless exceeded the constitutional minimum is better argued upon a more fully developed record in summary judgment proceedings. For present purposes it is sufficient to conclude that a viable claim of an Eighth Amendment violation has at least been alleged, despite the defendants' provision of some treatment. As such, Dr. Broadwell's motion to dismiss for failure to state a claim upon which relief could be granted is due to be denied.

III. Injunctive Relief

Plaintiff seeks "an injunction ordering defendants to return plaintiff's cetirizine allergy medicine[.]" Compl. 4. Dr. Broadwell argues that, because he believes "Plaintiff has not stated a claim for deliberate indifference against Defendant Broadwell, Plaintiff's claims for injunctive relief should be dismissed." Def.'s Supp. Mem. [D.E. # 25] 14. However, as set forth above, this court concludes that plaintiff has at least stated a claim for deliberate indifference upon which relief could be granted. Accordingly, Dr. Broadwell's motion to dismiss plaintiff's request for injunctive relief is due to be denied.

IV. Punitive Damages

Dr. Broadwell also claims that the complaint does not support any claim for punitive damages. Id. at 14-15. Punitive damages may be awarded in § 1983 actions in appropriate circumstances, where the punishable conduct involves "'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). "The callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability" on a § 1983 claim alleging deliberate indifference.

9

Id. Because the court has determined that plaintiff has at least sufficiently alleged plausible claims for deliberate indifference as to Dr. Broadwell, he has also sufficiently alleged claims for punitive damages. Accordingly, Dr. Broadwell's motion to dismiss plaintiff's claims for punitive damages is due to be denied at this time.

V.  Qualified Immunity

Dr. Broadwell also contends that he is entitled to qualified immunity from plaintiff's suit. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant asserts the affirmative defense of qualified immunity, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). In it discretion, the court may address either prong first based upon the "circumstances in the particular case at hand." Id. at 236.

In this case, the court finds that the record is insufficient to conclude that Dr. Broadwell is entitled to qualified immunity. Plaintiff has adequately pled both a serious medical condition and a refusal to provide adequate and effective treatment for that condition without undue delay. Thus, the court will deny Dr. Broadwell's motion to dismiss on qualified immunity grounds. If need be, the court will entertain a motion for summary judgment raising the defense on a more fully developed record.

10

Case 5:11-ct-03192-F  Document 39  Filed 01/24/13  Page 10 of 19

## NURSE DEFENDANTS' MOTION TO DISMISS

Defendants K. Hull and M. Gaskill, both nurses at Pamlico Correctional Institution, have also filed a motion to dismiss contending that plaintiff has failed to state any claim upon which relief could be granted as to them, and that they are entitled to qualified immunity. The court will consider these arguments in turn.

I.      Sufficiency of Plaintiff's Allegations.

The nurse defendants contend that the complaint should be dismissed as to them pursuant to Rule 12(b)(6). Their argument is similar to Dr. Broadwell's:

> Plaintiff's complaint presents to the Court the classic case of an inmate who is in disagreement with the medical provider over the medical treatment he received. Plaintiff's complaint is not that he did not receive treatment; he admits he received treatment and recounts that treatment at length. Plaintiff's complaint is that he did not receive the specific treatment he demanded. In light of the extensive treatment Plaintiff indisputably received, the facts alleged by Plaintiff simply do not rise to the level of deliberate indifference to a serious medical need, such that Plaintiff might be entitled to relief.

Defs.' Supp. Mem. [D.E. # 35] at 4. As set forth above, the court does not find plaintiff's allegations insufficient merely because he was afforded some treatment. Thus, the court will examine plaintiff's discrete allegations as to each nurse defendant in order to determine whether he has stated a claim for relief.

Plaintiff appears to allege at least four instances in which the nurse defendants exhibited their deliberate indifference to his serious medical needs. Plaintiff first alleges that defendant Hull was deliberately indifferent

> when he, on 12/29/10 called me as a to a sick call appointment regarding my complaints surrounding my continued headaches behind my high blood pressure and allergy issues whereas he took my blood pressure reading and examined my throat, finding my blood pressure to be high ("151/91") yet sent me back to my housing unit

11

> with instructions to merely keep taking the Ibuprofen and Claritin prescribed by the doctor. Having informed him of my present headache, high blood pressure induced chest pains, my swollen throat, sore and swollen mouth, allergy induced, that wasn't being helped by the ibuprofen and claritin, being both inadequate, he responded by saying "he did not care" and there was nothing he would do for me, so I should continue taking the ibuprofen. . . . Defendant Hull's nonchalant attitude on 12/29/10, his response to my plead of pain and discomforts, of inadequacy of medicine, that he "did not care" was sufficient to reasonably infer "deliberate indifference" to my serious medical needs and to the unnecessary and wanton infliction of pain, as I was hurting at that moment when he said he did not care.

Compl. 8-9.

Plaintiff next claims that Nurse Gaskill also violated his rights, when, shortly after the alleged actions of nurse Hull on 12/29/10, she

> refused to examine me after my "inmate declared emergency," a quicker and alternative way of being seen at medical than a sick call request that would take days, after I expressed that I was experiencing a severe headache, blood pressure being 151/99 when checked just recently by Nurse Hull who did not care, coupled with chest pains and dizziness, that could be a possible stroke or hear attack. She instead conferred briefly with Nurse Hull and sent me back to my unit without a examination via a stethoscope to listen to my heart, or EKG machine generally used when a person with a history of hypertension complains of chest pains and have a blood pressure reading as mine was 151/99.

Compl. 9-10.

Plaintiff further alleges that Nurse Gaskill, at a sick call appointment on January 20, 2011, again refused to examine plaintiff beyond the cursory "protocol" check of his vitals. Compl. 10. He states that the sick call appointment was requested due to his "headaches induced by my untreated high blood pressure, . . . and my allergy issues, swollen throat, etc., etc." Id. Plaintiff avers that Nurse Gaskill did not examine his throat, yet stated "that nothing was wrong with it, and she totally ignored the danger sign from my blood pressure being 177/94, stroke or heart attack numbers. She sent me to my unit again." Id. Plaintiff complains that his "blood pressure numbers sufficed to

12

warrant a more detailed examine [sic], and a different professional attitude from Nurse Gaskill." Id. at 10-11.

Plaintiff's final allegation also involves Nurse Gaskill. Plaintiff alleges that on February 14, 2011, Nurse Gaskill saw him due to his "declared emergency" after a weekend experiencing "high blood pressure induced headache, chest pains, bouts of dizziness, and irritation from my untreated allergy problem that included sneezing and coughing that produced specks of blood to the extent that I saved the toilet tissue to show medical . . . ." Id. at 11. He states that he "was placed in an observation room where she took my temperature, asked nothing as to what was wrong with me, just told me to go back to my housing unit." Id. Plaintiff claims that Nurse Gaskill ignored his complaints about his symptoms, did not check his blood pressure, called a correctional officer to remove plaintiff when he refused to return to his unit, and mistakenly informed the officer that plaintiff had already received his newly prescribed medications to address his conditions. Id. at 11-12. He concludes, "Nurse Gaskill failed to see me concerning my complaints, acknowledge the bloody tissue I held, or treat me at all. I was merely sent away by Nurse Gaskill with the only thing resolved, her false accusation." Id. at 12.

Like Dr. Broadwell, the nurse defendants largely argue that the amount of treatment plaintiff did receive for his conditions defeats his allegations of deliberate indifference.

> In his complaint, Plaintiff admits his blood pressure was monitored on numerous occasions. He admits he was given a "drug cocktail" consisting of Verapamil, Clonidine, and Enalapril for his high blood pressure. He admits he was given Claratin for his allergy symptoms, and admits this medication was "consistently prescribed by [the] doctor and given by [the] nurses[.]" He admits he was given Ibuprofen for his headaches.
>
> Plaintiff admits that Nurse Hull saw him on December 12, 2010, regarding his complaints and that Nurse Hull took his blood pressure and examined his throat.

13

> He admits that after this examination, Nurse Hull instructed him to continue taking his medications as prescribed. He admits that Nurse Gaskill examined him on January 20, 2011, and followed the facility's protocol in doing so. He admits he was seen again on February 14, 2011, by Nurse Gaskill and placed in Observation. Moreover, the attachments to Plaintiff's Declaration indicates he submitted 13 sick-call slips in a 16 week period between December 2010 and March 2011. Each and every one of these sick-call slips was reviewed and responded to by medical personnel.
>
> As Plaintiff's Complaint itself illustrates, Plaintiff received repeated and extensive medical care from the medical staff at Pamlico C.I. His argument is not that treatment was not rendered, but that treatment was ineffective, or not effective enough. At most, such assertions might support a claim for negligence or medical malpractice. As noted above, neither negligence nor malpractice will support a Section 1983 claim for violation of the Eighth Amendment. Even when construed in the light most favorable to Plaintiff, the allegations in his Complaint simply do not rise to the very high level of deliberate indifference necessary to sustain his constitutional claim. For this reason, Defendant Nurses' Motion to Dismiss should be granted and Plaintiff's Complaint should be dismissed.

Defs. Supp. Mem. [D.E. # 35] 5-6. As set forth above, this court does not agree that merely because plaintiff received some attention or treatment, his claims of deliberate indifference must be dismissed. Nor is it entirely accurate to argue that "Plaintiff's complaint is that he did not receive the specific treatment he demanded." Defs.' Supp. Mem. [D.E. # 35] 4. Plaintiff's allegations are more fairly construed as complaining about defendants' indifference to his suffering due to ineffective medications. To the extent he "demanded" any "specific treatment," he only sought restoration of prior prescriptions which successfully treated his conditions. Furthermore, as stated previously, given the content of plaintiff's allegations, the court believes that any defense that the care and treatment actually provided by the nurse defendants was constitutionally adequate is better presented upon a more fully developed record in summary judgment proceedings. Nevertheless, the court also must recognize that plaintiff's claims against the nurse defendants are of a different character than his claims against Dr. Broadwell.

14

The foundational allegations comprising plaintiff's claims, that Dr. Broadwell unjustifiedly altered plaintiff's successful medication regimen and refused to reconsider or even see plaintiff for several months as plaintiff suffered with the new medications, are on their face more concerned with the conduct of Dr. Broadwell than the nurse defendants. By comparison, plaintiff's specific allegations against the nurse defendants are less compelling. Plaintiff acknowledges that the nurses generally saw him and responded to his sick call requests, even if they did so less than satisfactorily when they instructed him to adhere to Dr. Broadwell's treatment plan. Plaintiff's more pointed complaint appears to be with the "attitude" allegedly exhibited by the nurse defendants. See Compl. 8 (alleging that Nurse Hull told plaintiff "'he did not care'" about plaintiff's complaints and displayed a "nonchalant attitude"); id. at 11 (complaining about Nurse Gaskill's alleged lack of "professional attitude" on January 20, 2011); id. at 11-12 (complaining that Nurse Gaskill "falsely accused" him of already receiving new prescriptions). However objectionable one might find the nurse defendants' perceived lack of sympathy or unprofessional attitude, those allegations alone, even if construed as true, do not suffice to allege actionable deliberate indifference on their part.

Rather than focusing on perceived slights or attitude, the court must examine the nurses' full course of alleged conduct in determining whether plaintiff's allegations suffice. This inquiry must account for the role of the nurses relative to that of Dr. Broadwell in providing plaintiff's treatment. "As a matter of professional conduct, nurses may generally defer to instructions given by physicians, 'but that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient.'" Holloway v. Delaware County Sheriff, 700 F.3d 1063, 1075 (7th Cir. 2012) (quoting Berry, 604 F.3d at 443). Hence, a "nurse may therefore act with deliberate indifference if he or she 'ignore[s] obvious risks to an inmate's health' in following a physician's

15

orders." Id. (quoting Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 683 (7th Cir. 2012)). Courts examining cases implicating the line between a nurse's appropriate deference to physician orders and deliberate indifference to the inmate's serious medical condition generally consider the degree to which the facts and circumstances surrounding the nurse's conduct indicate that the nurse was acting independently of the physician and whether the nurse was relying upon the physician's judgment in an area of his expertise. See, e.g., Berry, 604 F.3d at 443. Upon review of plaintiff's allegations, and construing them as true, the court finds that he has at least sufficiently stated claims of deliberate indifference against the nurse defendants.

Plaintiff has generally alleged that he suffered severe symptoms due to his high blood pressure, and that objective evidence of the condition was apparent due to the numerous elevated blood pressure readings that were observed at his various sick-call appointments. He has further alleged that he repeatedly conveyed the severity of his symptoms to the nurse defendants and explained that the alteration of his prescriptions by Dr. Broadwell was causing him to suffer. Plaintiff also alleges that he suffered severe symptoms due to the inadequate treatment of his allergic condition, that he repeatedly complained about his symptoms to the nurses, and that objective evidence, including throat inflammation and blood speckled tissues, supported his complaints. Plaintiff alleges that for weeks, if not months, the nurse defendants' at most only cursorily acknowledged his complaints and simply instructed him to continue with the ineffective medications, thereby forcing him to continue suffering despite their knowledge of his prior, efficacious treatment for the same conditions.

Like Dr. Broadwell, the nurse defendants assume for present purposes that plaintiff's allegations "present objectively 'serious' medical needs." Defs.' Mem. [D.E. # 35] 5. Furthermore,

16

the nurse defendants do not materially dispute plaintiff's core factual allegations regarding his symptoms and their responses. Finally, the nurses do not contend that they timely raised plaintiff's medical issues with Dr. Broadwell or other medical supervisors in an attempt to expeditiously procure more efficacious treatment for plaintiff. Accordingly, the court concludes that, given the facts and circumstances surrounding plaintiff's allegations, plaintiff has at least sufficiently alleged a plausible, non-speculative claim that the nurse defendants were deliberately indifferent to his serious medical needs due to "blind or unthinking" reliance on a prescription regimen which, it is alleged, was objectively ineffective at treating plaintiff's conditions, was causing him to suffer the severe symptoms of those conditions, and, therefore, posed a risk to his health. See Brown, 304 F. App'x at 208 (citing Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005), for proposition that "'dogged[] persist[ence] in a course of treatment known to be ineffective' can violate the Eighth Amendment"). While it is possible that, upon further development of the record, evidence will emerge that the nurse defendants were not deliberately indifferent to plaintiff's serious medical needs, it is not a sufficient defense at the pleading stage merely to assert that some observation or treatment–even if negligent or ineffective–was provided to plaintiff. The nurse defendants' motion to dismiss will be denied.

II.     Injunctive Relief

As noted above, plaintiff seeks "an injunction ordering defendants to return plaintiff's cetirizine allergy medicine[.]" Compl. 4. The nurse defendants argue that, for the reasons stated in support of their motion to dismiss for failure to state a claim, plaintiff cannot show a likelihood of success on the merits of his claims and, therefore, "[h]is request for injunctive relief should be denied." Defs. Mem. [D.E. # 35] 7. However, as set forth above, this court concludes that plaintiff

has at least stated a claim for deliberate indifference upon which relief could be granted. Accordingly, the nurse defendants' motion to dismiss plaintiff's request for injunctive relief is due to be denied at this time.

III. Punitive Damages

The nurse defendants also argue that plaintiff "cannot sustain any argument that he is entitled to punitive damages." Id. As noted above, punitive damages may be awarded in § 1983 actions in appropriate circumstances, where the punishable conduct involves "'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." Cooper, 814 F.2d at 948 (quoting Smith, 461 U.S. at 56). "The callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability" on a § 1983 claim alleging deliberate indifference. Id. Because the court has determined that plaintiff has at least sufficiently alleged plausible claims for deliberate indifference as to the nurse defendants, he has also sufficiently alleged claims for punitive damages. Accordingly, the nurse defendants' motion to dismiss plaintiff's claims for punitive damages is due to be denied at this time.

IV. Qualified Immunity

Finally, the nurse defendants argue that, because they "have demonstrated that they did not violate Plaintiff's constitutional rights on any of the multitudinous occasions upon which they examined Plaintiff, provided him with prescribed medications, or responded to his medical complaints[,]" they are entitled to qualified immunity from this suit. Defs.' Supp. Mem. [D.E. # 35] 8-9. In this case, the court finds that the record is insufficient at this time to conclude that the nurse defendants are entitled to qualified immunity. Plaintiff has adequately alleged that he suffered from a serious medical condition and that the nurse defendants' responses to his complaints exhibited

18

deliberate indifference to his serious medical needs. Thus, the court will deny the nurse defendants' motion to dismiss on qualified immunity grounds. If need be, the court will entertain a motion for summary judgment raising the defense on a more fully developed record.

## CONCLUSION

For all of the reasons given above, it is ORDERED that defendant Dr. Broadwell's motion to dismiss [D.E. # 24] and the nurse defendants' motion to dismiss [D.E. # 33] are DENIED.

SO ORDERED. This the 24 day of January, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge